IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2003

## DAVID L. ROBINSON, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**
**No. 95-139A     John Turnbull, Judge**

_____

**No. M2002-01814-CCA-R3-PC - Filed December 5, 2003**

_____

The petitioner, David L. Robinson, appeals the Putnam County Criminal Court's denial of his petition for post-conviction relief from his conviction for first degree murder and resulting sentence of life imprisonment. He claims he received the ineffective assistance of counsel because his trial attorneys (1) failed to challenge the fact that no African-Americans were on the jury, (2) failed to appeal an issue properly regarding a state witness's testimony, (3) failed to file a motion to sever his case from his codefendant's case, and (4) failed to call a potential defense witness to testify. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Kevin R. Bryant, Crossville, Tennessee, for the appellant, David L. Robinson.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William Edward Gibson, District Attorney General; and Eric D. Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the petitioner's killing Gerald L. Irwin in 1995. A jury convicted the petitioner, and this court affirmed the conviction. See State v. David Lee Robinson, No. 01C01-9609-CR-00412, Putnam County (Tenn. Crim. App. Feb. 10, 1999), app. denied (Tenn. June 28, 1999). On appeal, this court stated the following facts: The petitioner owed money to the victim, a drug dealer, and agreed to meet the victim in order to repay the debt. On the night of January 12, 1995, Delores Kay Smith drove the petitioner to Cookeville to meet the victim. When the victim arrived, the petitioner entered the back of the victim's car while Ms. Smith waited in her car. As the victim turned his car around in a parking lot, the petitioner shot the victim in the back of the head. He then drove the victim's car past Ms. Smith's car and motioned for her to follow him. The

petitioner drove the victim's car to Tucker Ridge Road, took the victim's wallet and other belongings, and got into Ms. Smith's car. He and Ms. Smith then returned to Cookeville. The petitioner and Ms. Smith were tried jointly, and the jury convicted the petitioner of first degree murder and Ms. Smith of second degree murder. David Lee Robinson, slip op. at 2-3.

At the evidentiary hearing, one of the petitioner's trial attorney's testified that he had practiced law for almost thirty-four years in Putnam County and that he had tried several criminal cases. He said that he and his co-counsel noticed that no African-Americans were on the jury but that they did not discuss challenging the jury panel. He said that he thought the African-American population in Putnam County was less than two percent, that the jury had been chosen correctly, and that African-Americans were not excluded from the jury intentionally. He said that the district attorney's office had an open file policy in this case and that a man named James Rice gave a statement to Tennessee Bureau of Investigation (TBI) Agent Larry O'Rear. He said that his co-counsel got audiotaped and transcribed copies of Mr. Rice's statement and that co-counsel wanted to interview Mr. Rice but could not find him. He said that the state had issued a subpoena for Mr. Rice but that the subpoena was returned because Mr. Rice could not be located. He said that although Mr. Rice's taped statement seemed to end abruptly, Agent O'Rear assured him the audiotape contained Mr. Rice's entire statement.

The petitioner's trial attorney testified that he and the petitioner discussed severing the petitioner's case from Ms. Smith's case. He said defense counsel feared that if the cases were severed, Ms. Smith's statements would be admissible evidence against the petitioner at trial. He said the petitioner decided not to file a motion to sever. He said that during the trial, Agent O'Rear testified for the state and was qualified as an expert. He said that he had objected to Agent O'Rear's testifying as an expert but that the trial court overruled the objection. He said that Agent O'Rear testified on direct that as a result of Agent O'Rear's investigation, Agent O'Rear ruled out James and Nicole Rice as suspects and focused on the petitioner. He said that Agent O'Rear's direct testimony "opened the door" to cross-examination testimony that was helpful for the defense. He said he thought he had raised the issue regarding Agent O'Rear's being improperly qualified as an expert in the petitioner's motion for new trial.

On cross-examination, the petitioner's attorney testified that about a month before trial, he and co-counsel began preparing the petitioner's case, met with the petitioner everyday, and reviewed Mr. Rice's statement and physical evidence with the petitioner. He also acknowledged reviewing defense strategies, consequences of a conviction, and elements of the crime with the petitioner and said that the state made a plea offer but that the petitioner wanted to go to trial. He said that in addition to objecting to Agent O'Rear's being qualified as an expert, he also argued to the trial court that he should be allowed to cross-examine Agent O'Rear about hearsay statements. He said that there were advantages to the petitioner's case not being severed from Ms. Smith's case and that he could not think of anything the defense should have done differently.

The petitioner's co-counsel testified that he loaned the petitioner clothes to wear at trial and that in order to prepare the petitioner for trial, he videotaped the petitioner's proposed testimony and

asked potential cross-examination questions. He said he did not remember talking with co-counsel about the fact that no African-Americans were on the jury, but he noted it was not unusual for no African-Americans to be on a Putnam County jury because the percentage of African-Americans in the county was very low. He said that the defense tried to find James Rice before trial, that he had copies of the statement Mr. Rice gave to Agent O'Rear, and that he talked to Nicole Rice but she would not testify. He said that Mr. Rice had prior convictions for forgery and possession of stolen property, that Mr. Rice probably was taking drugs on the night of the victim's death, and that Mr. Rice would have had to have damaging testimony for the state's case in order for the defense to call him as a witness.

Co-counsel testified that he talked with the petitioner about severing the petitioner's case from Delores Smith's case. He said that Ms. Smith had made statements that were devastating to the petitioner's case and that by trying the cases together, the state could not admit those statements into evidence. He said he thought the trial court incorrectly qualified Agent O'Rear as an expert and improperly allowed Agent O'Rear to testify about ruling out James and Nicole Rice as suspects. He said the defense objected to Agent O'Rear's testimony but was overruled. He said the defense also argued that it should be allowed to cross-examine Agent O'Rear more extensively but again was overruled. He said that in the petitioner's motion for new trial and in the appeal of the petitioner's conviction, he thought he properly raised the issue regarding Agent O'Rear's testimony. He said the court of criminal appeals ruled the defense had waived the issue. He said he did not meet with the petitioner before he filed the petitioner's motion for new trial or notice of appeal.

The petitioner testified that he did not understand how the jurors were selected or if having an African-American juror on the panel would have changed the outcome of his case. He said, though, that he felt the jury would have understood him better if at least one African-American had been on the jury. He said that he knew before trial that no African-Americans were on the jury but that he did not discuss it with his attorneys. He said that he did not remember discussing the severance issue with his attorneys but that if they did, they did so briefly. He said he never requested a severance because he did not know anything about it. He said that he did not know James Rice but that Mr. Rice contacted his father after the trial and wanted to know why no one had interviewed Mr. Rice or asked him to testify. He said that his father never had trouble finding Mr. Rice and that his father had Mr. Rice give an affidavit. He said that if Mr. Rice had testified at trial, the outcome of his case would have been different. He said that he asked that the issues about no African-Americans being on the jury and Agent O'Rear's testimony be included in his motion for new trial but that they were not. He said he would have died if he had not killed the victim.

On cross-examination, the petitioner acknowledged that few African-Americans live in the area. He also acknowledged that he was present when the jury was selected and that the attorneys questioned each juror individually. He said that he wanted a severance in the case because he was an African-American male, his codefendant was a white female, and the jurors were all white. He said his codefendant's testimony could not have hurt his case. He said that he did not know Mr. Rice's name had been on the state's witness list, that a subpoena had been issued for Mr. Rice, or that the subpoena had been returned because Mr. Rice could not be found. He acknowledged that

his trial attorneys were thorough, hardworking, met with him regularly, and reviewed the charges and possible defenses with him. He said that the state offered to let him plead guilty in return for a sentence of life without parole and that his attorneys did not explain the consequences of a guilty verdict.

TBI Special Agent Larry O'Rear testified that he interviewed James Rice once and that Mr. Rice's entire statement was tape recorded and transcribed. On cross-examination, he said that he was unaware of anyone else interviewing Mr. Rice and that Mr. Rice gave only one statement.

The state told the trial court that James Rice was deceased. Although the petitioner had attached James Rice's affidavit to his petition for post-conviction relief, the trial court stated that it could not admit the affidavit into evidence because Mr. Rice was unavailable for cross-examination. In Mr. Rice's affidavit, which he gave after the petitioner's trial, Mr. Rice claimed that he made two statements to Agent Larry O'Rear. In addition, he claimed that on the night the petitioner shot the victim, he heard the victim say that the victim was going to kill someone if the victim was not repaid a debt.

In denying the petitioner's petition for post-conviction relief, the trial court held that the petitioner had presented no proof that African-Americans had been intentionally excluded from the jury. Regarding counsel's failure to interview James Rice, the trial court stated that counsel tried to find Mr. Rice, that a subpoena had been issued for him, that Mr. Rice could not be located, and that it believed counsel's testimony over that of the petitioner. In addition, the trial court stated that even if it could consider Mr. Rice's affidavit as evidence, the affidavit would not warrant post-conviction relief because the trial court believed Agent O'Rear's testimony over the information contained in the affidavit. As to the severance issue, the trial court held that counsel strategically decided not to seek a severance in this case and that it would not second guess that decision. Finally, regarding trial counsel's failure to raise properly on appeal the issue about Agent O'Rear's trial testimony, the trial court held that counsel's objection to O'Rear's testimony at trial had been "much ado about nothing" and that it could not say O'Rear's testimony had any impact on the outcome of the trial. The trial court denied the petitioner's petition for post-conviction relief.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States,

491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## I. NO AFRICAN-AMERICANS ON JURY

The petitioner claims that he received the ineffective assistance of counsel because his trial attorneys failed to investigate why no African-Americans were on the jury. The state claims that the petitioner has failed to "present any evidence suggesting that his counsel could have raised even a colorable claim to the jury selection process" and, therefore, that he has failed to show that he received the ineffective assistance of counsel. We conclude that the petitioner is not entitled to relief.

The petitioner's entire argument regarding this issue consists of the following:

> At trial the jury panel contained no African-American citizens. Trial [Counsel] testified at the post-conviction hearing that this matter was not discussed with the petitioner . . . . By failing to investigate and/or to determine the methodology of selected . . . panel, trial counsel was ineffective.

The petitioner offers no argument to support his contention, cites to nothing in the record to support his claim, and cites to no authority as required by Rule 27(a)(7), T.R.A.P. The issue is waived.

## II. FAILURE TO RAISE ISSUE PROPERLY ON APPEAL

The petitioner claims that his attorneys rendered deficient performance by failing to raise properly in the appeal of his conviction an issue regarding Agent Larry O'Rear's testimony. Moreover, he claims that he was prejudiced by the deficiency because this court determined in its

opinion that the issue had been waived. The state claims that counsel's failure to argue every issue on appeal does not per se constitute ineffective assistance of counsel. We conclude that the petitioner is not entitled to relief.

We observe that the petitioner has not made the trial transcript containing the parties' arguments regarding Agent O'Rear's testimony part of the post-conviction record. However, we may take judicial notice of the record in the appeal of the petitioner's conviction. See State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 505, 376 S.W.2d 451, 453 (1964). The trial transcript reveals that during Agent O'Rear's direct testimony at trial, the state asked Agent O'Rear if he had questioned James and Nicole Rice during his investigation of the victim's death. He said yes, and the following exchange took place:

> [State]: Did you form an opinion at the conclusion of your investigation of them?
>
> [Defense]: Objection, Your Honor. This is hearsay by inference and [innuendo].
>
> [State]: I respectfully submit, Your Honor, that this is an expert opinion predicated upon the officer's qualifications that were not challenged on voir dire by the defendants.
>
> THE COURT: You're asking him for an opinion as to . . . .
>
> [State]: Their culpability as a result of the investigation.
>
> [Defense]: This is based on [innuendo]----this is based on their responses to his questions and I was provided by them. This is hearsay, Your Honor; I'd object.
>
> THE COURT: Overruled. You may proceed.
>
> . . . .
>
> [State]: At the conclusion of your investigation of James Neal Rice, did you form an opinion as to their culpability in the death of Gerald Irwin?
>
> [O'Rear]: Yes, I did.
>
> [State]: And what was that opinion, sir?

[O'Rear]: That they had nothing to do with the death of Gerald Irwin.

The petitioner's trial attorneys also represented him in the appeal of his conviction. In the petitioner's amended motion for new trial, counsel claimed that the trial court erred by allowing Agent O'Rear to testify that James and Nicole Rice were not involved in the victim's death and that a later ruling allowing the defense to cross-examine Agent O'Rear did not make the error harmless. In the appellate brief, counsel argued that the trial court erred by allowing Agent O'Rear to testify about ruling out James and Nicole Rice as suspects because, although the Rices did not testify at trial, Agent O'Rear's testimony invaded "the duty of the jury to judge the credibility of the witnesses." This court held that the petitioner had waived the issue because he did not make the same argument at trial. See David Lee Robinson, slip op. at 5; see also State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000) (providing that a defendant "cannot change grounds for objections from the trial court to the appellate court").

Even if defense counsel failed to raise the issue on appeal properly, we conclude that any error committed by the trial court in allowing Agent O'Rear to testify was harmless. Agent O'Rear testified that he questioned James and Nicole Rice, that he ruled them out as suspects, and that his investigation focused on the petitioner. Even if this testimony was improper, given the other evidence presented at trial, we believe the jury's hearing it did not affect the jury's verdict. Thus, the petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to raise the issue properly on appeal.

### III. FAILURE TO REQUEST SEVERANCE

The petitioner claims that he received the ineffective assistance of counsel because his trial attorneys failed to sever his case from his codefendant's case. The state argues that the petitioner's attorneys made a strategic decision not to file a motion to sever, which cannot be second-guessed by this court. We conclude that the petitioner did not receive the ineffective assistance of counsel.

The petitioner's attorneys testified that they believed a severance would have hurt the petitioner's case, that they discussed it with the petitioner, and that the petitioner decided not to request a severance. As noted by the trial court, this issue goes to the defense's trial strategy, and we do not use the benefit of hindsight to second-guess trial strategy by counsel and criticize trial counsel's tactical decisions. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). We conclude that the trial court did not err in determining that the petitioner received the effective assistance of counsel.

### IV. FAILURE TO INTERVIEW JAMES RICE

Finally, the petitioner claims that his attorneys rendered deficient performance because they failed to interview James Rice before trial. In addition, he argues that he was prejudiced by the deficiency because Mr. Rice's testimony "would undoubtedly have bolstered the Petitioner's self-

defense claim." The state claims that the petitioner has failed to show that he received the ineffective assistance of counsel. We agree with the state.

At the post-conviction hearing, the petitioner tried to introduce into evidence James Rice's affidavit, which had been prepared after the petitioner's trial and attached to his post-conviction petition. In the affidavit, James Rice claimed that he gave two statements to Agent O'Rear and that he told Agent O'Rear he heard the victim threaten to kill someone if the victim was not repaid the debt owed by the petitioner. The state informed the trial court that James Rice was deceased and objected to the affidavit on the grounds that it was hearsay. The trial court determined that the affidavit was inadmissible because Mr. Rice was unavailable for cross-examination.

The petitioner's attorneys testified that the state had issued a subpoena for Mr. Rice, that Mr. Rice could not be located, that they listened to Mr. Rice's audiotaped statement, and that Mr. Rice's testimony would have had to have been damaging to the state's case in order for the defense to have called him as a witness. In denying post-conviction relief, the trial court held that counsel did not render deficient performance because they tried to find Mr. Rice and Mr. Rice could not be located. It also noted that even if Mr. Rice's affidavit had been admissible, it would not warrant post-conviction relief because the trial court believed Agent O'Rear's testimony that Mr. Rice gave only one statement to the police. We agree with the trial court that the petitioner has not demonstrated that his attorneys rendered deficient performance in this case. Neither the state nor the defense could locate Mr. Rice. Moreover, even if the petitioner's attorneys had interviewed him, Mr. Rice may not have been called to testify for the defense at trial. Finally, the trial court accredited Agent O'Rear's testimony over the information contained in the affidavit. The defendant has failed to show that he received the ineffective assistance of counsel.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the petition for post-conviction relief.

 

 

_____
JOSEPH M. TIPTON, JUDGE